# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

IN RE:

PETER BERNEGGER, PETITIONER                    No. 3:15CV182-MPM-SAA

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Peter Bernegger to depose Sally Freeman, the retired Courtroom Deputy Clerk for the late United States District Judge. W. Allen Pepper – for the purpose of perpetuating her testimony under Fed. R. Civ. P. 27.  In addition, the court has directed Mr. Bernegger to show cause why the instant case should not be dismissed as frivolous – and sanctions imposed limiting his ability to file similar cases in the future.  For the reasons set forth below, the petition will be dismissed as frivolous and the court will screen any future case Mr. Bernegger files for merit before opening it.

## Facts in the Record

Mr. Bernegger states that, in *United States v. Bernegger*, 1:07CR176-MPM (N.D. Miss.) he was charged in all six counts of his indictment – and that the court erred in presenting only Counts Two through Six to the Jury during their deliberations.  Bernegger has presented several documents showing that, at various times in the criminal proceedings, the government and the court stated that he was charged in all six counts of the Indictment.  Indeed, near the end of trial, Courtroom Deputy Clerk Sally Freeman had typed a Form of the Verdict stating that Mr. Bernegger was charged in all six counts of the indictment.  However, Assistant United States Attorney Robert Mims told Mrs. Freeman that the government never intended to charge Mr. Bernegger in Count One – and asked Mrs. Freeman to type another Form of the Verdict to present to the Jury – one that excluded Count One as to Mr.

Bernegger. Mrs. Freeman did so, the court presented the new verdict form to the Jury, and the Jury considered only Counts Two through Six against Mr. Bernegger in their deliberations. Only Mr. Mims, Mrs. Freeman, and Mr. Bernegger, himself, were privy to the original exchange; however, the court considered the issue in multiple discussions about it on the record.

In a discussion out of hearing of the jury, attorneys for both defendants and the court discussed whether the Form of the Verdict should include a space for the Jury to consider Count One as to Mr. Bernegger. Both defendants and the court agreed that Count One did not charge Mr. Bernegger with a crime. No one disputed that the Jury had been told – much earlier in the trial – that Mr. Bernegger had been charged in Count One. The court concluded that the best way to handle the situation was to provide a Form of the Verdict to the Jury that did not include a blank to find Mr. Bernegger guilty as to Count One. Mr. Bernegger has alleged, many times, that this issue was handled entirely off the record – and thus constituted a "fraud upon the court." However, the trial record of Mr. Bernegger's criminal case paints an entirely different picture. To make this clear, the court has included the entire text of one of the several discussions of the matter below.

THE COURT: Anything before the jury comes back?

MR. MIMS: Yes, Your Honor. We talked about jury instructions a while ago. I have not seen a form of the verdict. Do we need? Maybe we need to take that up –

THE COURT: No, no, I had seen it. I have reviewed it. I want you to look at it.

(Brief pause.)

Mr. Mims, do you see the form of the verdict?

MR. MIMS: Your Honor, the government has reviewed it. We have no objections to it.

THE COURT: Mr. Daniels.

MR. DANIELS: Yes, I'm looking, Your Honor.

THE COURT: Gentlemen, form of the verdict?

MR. PARK: Your Honor, there is no objection to Mr. Finch in relation to his, but I believe there is an error in the other instruction.

MR. DANIELS: There is, Your Honor. As much as I –

MR. MIMS: Your Honor, the issue comes from whether or not Mr. Bernegger should be named as a defendant as to Count 1, or whether he is a defendant in Count 1. The government has never taken the position that he is. Perhaps there was some confusion in the indictment because in Count 1, we described the overall scheme and included Finch and Bernegger to the overall scheme, but as to the specifics in Count 1, that's in, I think, paragraph 9 of the indictment, it talks about execution of the scheme, and that was only talking about Mr. Finch and what he related to Mr. Mobley. It was never our intentions to charge him in Count 1.

THE COURT: All right. So it's the government's intention, then, that -- let me see a second. Well, is it correct then?

MR. MIMS: I think it's correct.

MR. DANIELS: Your Honor, this is – which is great news, by the way, but I'm a little bit perplexed because it does charge him. I will, therefore, ask that we redact his name from the indictment, or either the court direct a verdict because the jury has in its mind that Mr. Bernegger -- this is the best news I have had today, Your Honor -- is charged in Count 1. If I remember correctly, I need to look back at my -- I do know that in the jury instructions he was not included, as I remember, in Count 1.

THE COURT: I think the jury instructions themselves are explanatory as to which counts apply.

MR. DANIELS: Right. But you certainly can see my confusion.

THE COURT: I could see your confusion, and I could also see your elation.

MR. DANIELS: Yes, I'm over and above.

THE COURT: I think if it's not included in the count and in the form of the verdict, they certainly can't find them guilty of it.

MR. DANIELS: You are exactly right, Your Honor. But I need to do something to cure the record, whatever that happens to be. Thirty years of practice, I haven't been presented in this situation. But you know, if I read this indictment, I would think that both people are charged. Again, I'm

- 3 -

happy, but just whatever, you know. It needs to be cured in some way.

MR. PARK: Your Honor, the fact is that the superseding indictment was read to the jury, but perhaps if they are just instructed by the court not to include him in the consideration and explain the jury forms.

THE COURT: What about that, gentlemen?

MR. MIMS: Your Honor, it's in the instructions. I think it's been adequately covered. The indictment is not going back to the jury. I'm not sure why they want to highlight it by drawing attention to it.

THE COURT: I think the instructions, as they are, are adequate. Mr. Daniels, you can't find him guilty if there's not a blank to fill in.

MR. DANIELS: Right.

THE COURT: I would take that as a victory on your part.

MR. DANIELS: Thank you, Judge, I need one today.

COURTROOM DEPUTY: We always do send the indictment back. Are you telling me now that this superseding will not go to the back?

MR. MIMS: I did not realize it goes back. If it goes back, that's fine, too. Can I say this to kind of explain for the record?

THE COURT: Yes.

MR. MIMS: Your Honor, the way the indictment is drafted, it sets forth a broad scheme whereby these two gentlemen are going to defraud by this general method, and then we have specific counts that pertain to specific mailings, or wire transactions. And the count at the end of Count 1, it describes specifically the wire transfer of Mr. Mobley's money which pertains to Mr. Finch's misrepresentations. Counts 2 and 3 pertain to specific mailings relating to Mr. Bernegger's misrepresentations. Count 4, again, deals with the GAF letters about Mr. Bernegger, and 5 is the conspiracy. But Count 1 is accurate in that there is a grand scheme that the two are acting together in. But specifically, the wire transfer, as part of Count 1, pertains only to Mr. Finch.

THE COURT: I will -- what I will do, when I get to the verdict form, I will explain try to explain to the jury that the verdict forms themselves are individual, and they can only find the defendants liable -- excuse me, guilty if there is a -- I hate to say it this way, if there is a blank to fill in. I'm going to come up with something better than that, but that's about what

it boils down to.

MR. DANIELS: And I would ask that the jury be instructed that Mr. Bernegger is in no way, shape, form or fashion related to the charges existing in Count 1.

THE COURT: I can't do that. He can't be found guilty in Count 1, but I can't say he is not related to it.

MR. DANIELS: Well, then I need a curative instruction of some sort to the jury, Your Honor, because at the outset of this case, this question came up, as I remember it. Now, that's been seven, eight days ago, but it clearly, the clear import was to that jury that Count 1 included Mr. Bernegger. I'm glad it doesn't, but I ask the court to cure that in some way.

THE COURT: I'm going to instruct the jury that as to the counts that apply to each defendant, is what I'm going to do. Now, we were at a point where Mr. Mims, you are getting ready, I believe, to cross-examine, and we need a jury before we can do that. Just a minute. Before we do that, what is your position about the -- in light of the facts that -- on what Mr. Daniels is saying, if there is a possibility of confusion on the things, do we want the indictment to go back?

MR. MIMS: If that's the court's standard procedure, I would like to do it. I don't think there is any confusion about it.

THE COURT: All right. I think it's important that the jury have something to relate to, as far as what the charge is, if they are going to find the defendant either guilty or not guilty as to that particular count. I'm going to instruct the jury, though, along with what Mr. Daniels has brought up, as to the verdict they can reach from each one, and that's it.

Criminal Trial Transcript, *United States v. Bernegger*, 1:07CR176-MPM [208-7, p. 121-127].

The government thus explained the source of confusion regarding Count One to the court – and made clear that, despite any prior representations to the contrary, the government did not intend to charge Mr. Bernegger in Count One. Counsel for Mr. Bernegger was both surprised and "elated" to hear that Mr. Bernegger was not charged in Count One – and asked that the court give the Jury an instruction making that clear. The court granted that request by instructing the Jury:

Now, ladies and gentlemen, I cannot emphasize enough to you that unless there is a

blank here provided for that defendant, you cannot find that defendant guilty of that count, and the example that I'm giving you primarily deals with Count I. Count I mentions – goes in great detail, you will have this superseding indictment back there, and Mr. Bernegger is mentioned, his name is mentioned in Count I. But there is no provision for you to find Mr. Bernegger guilty of Count I of that indictment.

*See id.*at [208-7, p. 167-168]. The court also discussed the issue on the record with counsel for both defendants several other times during the trial. *See id.*at [208-7, p. 141-142, 146-147]. Thus, throughout the rest of the proceedings, Mr. Bernegger's counsel, codefendant's counsel, this court, and later, the Fifth Circuit – all concluded that the removal of Count One from the Jury's consideration was proper, and indeed inured to Mr. Bernegger's benefit.

**Application of Rule 27 to Mr. Bernegger's Allegations**

Mr. Bernegger seeks to proceed under Fed. R. Civ. P. 27, which reads, in relevant part:

**Rule 27: Depositions to Perpetuate Testimony**

**(a) Before an Action Is Filed.**

(1) *Petition.* A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. The petition must be titled in the petitioner's name and must show:

(A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;

(B) the subject matter of the expected action and the petitioner's interest;

(C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

(E) the name, address, and expected substance of the testimony of each deponent.

. . .

**(b) Pending Appeal.**

(1) *In General.* The court where a judgment has been rendered may, if an appeal has been taken or may still be taken, permit a party to depose witnesses to perpetuate their testimony for use in the event of further proceedings in that court.

(2) *Motion.* The party who wants to perpetuate testimony may move for leave to take the depositions, on the same notice and service as if the action were pending in the district court. The motion must show:

(A) the name, address, and expected substance of the testimony of each deponent; and

(B) the reasons for perpetuating the testimony.

. . .

**(c) Perpetuation by an Action.** This rule does not limit a court's power to entertain an action to perpetuate testimony.

Fed. R. Civ. P. 27. Mr. Bernegger is proceeding under Fed. R. Civ. P. 27(c) in a separate action seeking to perpetuate Mrs. Freeman's testimony.

It appears to the court that Mr. Bernegger seeks to perpetuate testimony under Rule 27(a) (in anticipation of future litigation) – and, perhaps under Rule 27(b) because his appeal of the court's denial of relief under 28 U.S.C. § 2255 is currently pending before the Fifth Circuit Court of Appeals. He has not, however, met all the criteria for perpetuating testimony under Fed. R. Civ. P. 27. Mr. Bernegger has provided the following information:

► That he expects to be a party to an action in United States court, but cannot presently bring it,

► The subject matter of the anticipated litigation (a suit against various federal prosecutors and judicial staff),

► The facts he wishes to establish by the proposed testimony and the reasons to perpetuate it,

► The names or descriptions of the persons he expects to be adverse parties, and

▸ The expected substance of Mrs. Freeman's testimony (though he has not provided an address for her).

The court cannot, however, apply Rule 27 in a vacuum. "What circumstances show a possible failure or delay of justice sufficient to call for the issuance of an order [perpetuating testimony] is obviously a matter for the sound discretion of the district court." *Mosseller v. United States*, 158 F.2d 380, 382 (2$^d$ Cir. 1947); *see In re Eisenberg*, 654 F.2d 1107, 1111 (5th Cir. 1981) (trial court had the discretion to consider a foreign relations aspect of a petition to perpetuate testimony). "The right to [Rule 27] relief . . . does not depend upon the condition of the witness, but upon the situation of the party (petitioner) and his power to bring his rights to an immediate investigation." *Mosseller*, 158 F.2d at 382 (*quoting Hall v. Stout*, 4 Del. Ch. 269, 274 (1871)). In a motion to perpetuate testimony pending appeal, the court has discretion to allow the motion where it is "proper to avoid a failure or delay of justice." Fed. R. Civ. P. 27(b); *see Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 976 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986); *Murr v. Stinson*, 582 F. Supp. 230, 231 (E.D. Tenn. 1984). The court should consider (1) whether perpetuation of testimony is proper to avoid a failure or delay of justice in the case, and (2) whether the evidence sought to be perpetuated is likely to be lost while the appeal is pending, and whether the witness is likely to become unavailable to give testimony should further proceedings become necessary. *Murr*, 582 F. Supp. at 231.

The court will dismiss Mr. Bernegger's petition for several reasons: (1) the Fifth Circuit Court of Appeals has already held that the court's decision to exclude Count One of the Indictment from consideration by the jury was appropriate; thus, such a claim would be barred by *res judicata* and collateral estoppel; (2) the Government has already conceded all of the facts Mr. Bernegger wishes to establish through Mrs. Freeman's testimony; as such, her deposition is unnecessary; (3) as Mr. Bernegger stated in his petition, he, himself, may testify to establish these facts; (4) he has not shown

that Mrs. Freeman's health or age might prevent her from testifying in a future case; and (5) assuming everything Mr. Bernegger alleges is true, there was no "fraud upon the court" which might divest the court of subject matter jurisdiction. In other words, there would be no "failure or delay of justice" if the court denied Mr. Bernegger's petition.

### No "Fraud Upon the Court"

Black's Law Dictionary defines fraud as: "[a]n intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right." *Black's Law Dictionary,* 5th ed., 594. In this case, however, there is not even a hint of a "perversion of the truth," much less an intentional one. The decision regarding the exclusion of Count One of the Superseding Indictment was discussed multiple times – and is contained in the trial transcript – and all attorneys involved were included in each discussion.

A court may vacate a judgment if it is obtained through fraud on the court:

[A] federal court possesses inherent power to vacate a judgment obtained by fraud on the court. *See* 322 U.S. at 248–49, 64 S.Ct. 997. The Court thus "recognized what is now referred to as the 'fraud on the court' doctrine." *Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259, 1266 (10th Cir.1995). Rule 60(b) sets forth grounds upon which a party may move the district court to grant relief from a final judgment. And Rule 60(d)(3) confirms that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." Before December 1, 2007, when the rule was amended to add subsection (d)(3), substantively identical savings-clause language regarding fraud-on-the-court claims was included in Rule 60(b). *See* Fed.R.Civ.P. 60(b) (eff.Aug.1, 1987) (providing that "[t]his rule does not limit the power of a court to ... set aside a judgment for fraud upon the court"). The Supreme Court has noted that the inherent power to set aside a judgment due to fraud on the court, as recognized in *Hazel–Atlas*[*Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 239, 64 S. Ct. 997, 998, 88 L. Ed. 1250 (1944)], was reflected and confirmed in former Rule 60(b). *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 233–34, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (stating that Rule 60(b) "reflects and confirms the court's own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity" (quoting *Hazel–Atlas,* 322 U.S. at 244, 64 S.Ct. 997)). A fraud-on-the-court claim may be brought either as an independent action preserved by the savings clause in Rule 60(d)(3), or as a claim under Rule 60(b)(3), which provides for relief from judgment based on "fraud . . ., misrepresentation, or misconduct by an opposing

party." *See Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1291 (10th Cir.2005) (noting "courts have allowed parties to file a claim for fraud on the court under subsection (b)(3)"). In either case, this court applies the same demanding standard of proof for establishing a fraud on the court. *See id.*

*United States v. Baker*, 718 F.3d 1204, 1206-07 (10th Cir. 2013). However, a court's decision to

vacate a final judgment for fraud upon the court is not something to be undertaken lightly:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refin. Co. v. Universal Oil Products*, 169 F.2d 514 (3[d] Cir. 1948) 7 J. Moore, Federal Practice, P 60.33 at 510-11. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. *See Kupferman v. Consolidated Research & Mfg. Co.*, 459 F.2d 1072 (2[d] Cir. 1972); *see also England v. Doyle*, 281 F.2d 304, 310 (9th Cir. 1960).

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (*quoting United States v.*

*International Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D.Conn.1972), aff'd without

opinion, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973)).

As this court – and the Fifth Circuit Court of Appeals – have both held, there was nothing

improper about excluding Count One from the Jury's consideration. There was no "fraud upon

the court," as no one misrepresented to the court either the content of – or intent behind –

excluding Count One of the Superseding Indictment. Indeed, the court, itself – on multiple

occasions – discussed the issue on the record with all counsel involved. Nothing was hidden

from the court; as such, there was no improper conduct, much less "egregious conduct,"

regarding the removal of Count One from the Jury's consideration. Thus, there exists no "fraud

upon the court," and the entire issue supporting Mr. Bernegger's request to perpetuate Mrs.

Freeman's testimony is frivolous.

In sum, though there was some confusion early in the criminal proceedings, Mr.

Bernegger was not charged with a crime in Count One of the superseding indictment. The court

discussed the issue with all counsel involved multiple times on the record to arrive at that

conclusion.  The Fifth Circuit Court of Appeals agreed, thus precluding this court from

considering the issue again.  Further, as the record shows that this court was fully aware of all

facts relevant to the issue, no one perpetrated a "fraud upon the court," and any suit Mr.

Bernegger might wish to pursue on that basis would be frivolous.  Given the frivolous nature of

the underlying suit, there would be no "failure or delay of justice" if the court denied Mr.

Bernegger's petition to depose Mrs. Freeman in anticipation of it.  For the reasons set forth above, the

petition by Peter Bernegger to perpetuate the testimony of former Courtroom Deputy Clerk Sally

Freeman will be dismissed with prejudice as frivolous.

### The Propriety of Sanctions as a Deterrent to Filing Additional
### Frivolous, Vexatious, and Contumacious Suits

The court must now address whether a sanction is necessary to curb Mr. Bernegger's

habit of filing numerous meritless pleadings and motions – a habit which has affected the court's

ability to administer other cases on the docket.  Mr. Bernegger has, for years, bogged down the

court's docket with an endless stream of meritless filings.  Though, as discussed at length above,

he is primarily fixated upon whether Count One of the Superseding Indictment charged him with

fraud, his meritless claims regarding other issues abound, and the court will discuss a sampling

of those issues below.  In addition, the goal of Mr. Bernegger's civil suits is clearly to punish and

frustrate those involved in the investigation and prosecution of the criminal fraud charges against

him.  As further evidence of the vexatious and vindictive nature of his pleadings, he has sought

reconsideration of nearly every adverse ruling in his various cases in this court.  He has done so

at least 20 times in his criminal case, *United States v. Bernegger*, 1:07CV176-MPM-SAA, at

least 7 times in a related civil case, *Bernegger v. Adams, et al.*, 3:10CV5-MPM-SAA, and 3

times in yet another civil case, *Bernegger v. Haney, et al.*, 1:08CV77-GHD-JAD.  Thus, by the

court's rough count, Mr. Bernegger has sought reconsideration of at least 30 adverse rulings.

The court also notes that many of the orders Bernegger has challenged denied multiple motions;

as such, the number of adverse rulings, based upon the number of his motions, is *far* higher than

30.

In his myriad pleadings, Mr. Bernegger has shown absolutely no respect for the

institutions of the federal courts, the United States Attorney's Office, or state government

agencies. He has leveled numerous unfounded and scandalous accusations in pleadings,

motions, and emails to this court and the United States Attorney's Office, a very small sampling

of which is set forth below.

**Pleadings and Motions:**

> The ex parte [communication] was fraud on the court by the officers of the court
> [Assistant United States Attorneys] Mims, McGee (for lying by omission/silence),
> [Courtroom Deputy Clerk] Freeman and [United States District] Judge Pepper. Their
> act(s) were vile and stained the integrity of the court.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [352 at 8].

> Even if Peter and his attorney would have immediately understood what the cheating
> prosecutors were doing while they were doing it a yell of "objection" would have gone
> unrecorded. Peter and his attorney [were] taken by surprise, deception and were shell
> shocked all because of how the corrupt prosecutors and the other officers of the court,
> including Judge Pepper, colluded with the prosecutors in their scheme of a fraud upon
> the court as officers of the court.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [253 at 3]

> [State Auditor] Haney lied, misrepresented and omitted key facts in his documents,
> statements, and affidavit of the search warrant. Note: Bernegger is not challenging
> the search warrant here but only gives evidence of the nefarious acts of the [State
> Auditor] people to show a pattern of misconduct and fraud upon the their part.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [222 at 2]

> Bernegger witnessed Mike Brownlee lying on the witness stand at his sentencing
> hearing.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [222 at 4]

Robert Mims has a screw lose [sic] and Bernegger means that in a factual manner.

. . .

[H]ere is another fantasy recall by Robert Mims and the government alleging "If the written offer suggested a plea to all six counts, when the petitioner was only charged in Counts Two through Five, it was merely an oversight that occurred in hurriedly writing a plea offer during the middle of a jury trial."

. . .

Mims and McGee wanted a notch in their belt. Mims just began criminal prosecution work (asking judicial notice of this fact) and he wanted to win no matter the costs. Mims is a liar and a cheat and Bernegger states this as factual.

. . .

The prosecutors, including Judge Pepper, Court Deputy Freeman, Law Clerk Parker Howard, the State Auditors, the FBI all lied cheated, destroyed evidence, suppressed evidence, called a nephew to testify in place of a dead uncle, conducted fraud upon the court off the record and on the record just to scratch the surface. The integrity of the court was and is being defiled by these officers of the court.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [300 at 30, 32, 33].

Mims['] extortion was an obstruction of justice, it influenced potential and real witnesses who did testify.

. . .

Seven (7) prosecution witnesses lied on the witness stand, perjuring themselves. [Bruff Sanders, David Cooper, Stephen Finch, Donny Kisner, Dwight Dyess, Susan Hurst, and Skip Johnson].

*United States v. Bernegger*, 1:07CR176-MPM-SAA [169 at 8-14].

It was a massive hoard of lies by AUSA Robert Mims directly to this court.

*United States v. Bernegger*, 1:07CR176-MPM-SAA [374 at 15].

. . . the criminal extortion by an Asst. U.S. Attorney [Robert Mims].

. . .

Especially disturbing [are] the actions of Pepper, a Federal Judge, who knowingly exceeded jurisdiction and proceeded anyways. Emails were sent to Judges in Oxford, MS detailing other civil and felony crimes by Pepper before the November trial. As a reference to this case but not part of the claims, Plaintiff states Defendants committed

felonies by their actions

*Bernegger v. Adams*, 3:10CV5-MPM-SAA [1 at 5, 10]

**Emails:**

> Your corrupt con game is up Robert Mims and Clyde McGee. You had an ex parte communication with Trial Judge Allen Pepper, Jr., with Court Deputy Sally Freeman and with the court for the purpose of fraudulently changing my trial to your advantage. I've been provided an email which went directly to Judge Pepper stating I was indeed charged with count one wire fraud. The email came from your office. You signed it.

> It clearly shows I was charged with count one wire fraud. Just as I always said from the very beginning when I was indicted and arraigned on six counts, including count one. In addition to Judge Pepper himself reading to the jury with you both sitting there that I <u>was</u> charged with county one wire fraud at Tr. 9-11. Both of you lied, cheated, committed fraud on the court, and obstructed justice in my criminal case 1:07-CR-176-MPM by repeatedly saying "the Govt. never charged Mr. Bernegger with count one."

Excerpt from June 24, 2014 Email from Peter Bernegger to Assistant United States Attorneys

Robert J. Mims and Clyde McGee – and copied to Judge Aycock, Judge Michael Mills, Attorney

John Daniels, and United States Attorney Felecia Adams.

> **<u>Michael Mills – you have no jurisdiction in this case, I demand you recuse yourself now – today.</u> I am reporting you to the BAR and I'm coming after your law license. You're the crook along with the other officers of the court named above. I'm reporting you to the Fifth Circuit and Supreme Court too. NONE of you are getting away with this.**

> I demand IMMEDIATE and complete vacating of my conviction and sentence.

Excerpt from July 2, 2014, Email from Peter Bernegger to Judge Aycock, Judge Mills, U. S.

Attorney Felecia Adams, Assistant United States Attorney Clyde McGee, Defense Attorney John

Daniels, and Parker Howard, former Law Clerk to Judge W. Allen Pepper. (emphasis in

original).

> So Robert Mims wants anthrax sent to him at the US Attorney's office in Oxford, MS? It is ABSOLUTE proof Robert Mims is a complete liar. I wrote years ago Robert Mims could not open his mouth without lying – that is the truth. I eye witnessed him tell lie after lie both verbally and in writings to the court. Again he directly lied to this court as an officer of the court. Robert Mims is a pathological liar. **<u>I demand he be</u>**

**arrested immediately and charged with the numerous felony crimes he has committed – along with AUSA Clyde McGee, Parker Howard, Sally Freeman, Michael East's participation also.**

. . .

> TO: Michael Mills – so you want me to go around and accuse you of making, sending anthrax?? How would you feel? It is public knowledge (it is on the record) the US Attorney's office thinks I was making/sending anthrax. Classic Robert Mims – sensationalize it, create red herrings, deceive, lie, cheat, file umpteen false pleadings with the court. And do you know the US Attorney's Office threatened to put me in jail if I don't stop emailing them? What a wonder criminal "justice" system you have. Your [sic] the crooks.

Excerpt from July 2, 2014, Email from Peter Bernegger to Judge Aycock, Judge Biggers, Judge Brown, Judge Mills, and U. S. Attorney Felecia Adams (emphasis in original).

Again, this is but a small sample of the unrestrained diatribe Peter Bernegger has directed at anyone and everyone involved in his criminal conviction. Under Mr. Bernegger's view of events, the following people conspired and acted with malice to ensure that he was convicted – and that his direct appeal and subsequent *habeas corpus* challenge failed:

(1) The late Judge W. Allen Pepper, Jr. (the original presiding Judge);

(2) The present presiding Judge;

(3) The FBI;

(4) Assistant United States Attorney Robert Mims;

(5) Assistant United States Attorney Clyde McGee;

(6) Former Courtroom Deputy Clerk Sally Freeman;

(7) Former Law Clerk Parker Howard;

(8) Several members of the staff of the Court Clerk's Office;

(9) Mississippi State Auditor Haney;

(10) Various members of the State Auditor's office;

(11) Bruff Sanders;

(12) David Cooper;

(13) Stephen Finch;

(14) Donny Kisner;

(15) Dwight Dyess;

(16) Susan Hurst;

(17) Mike Brownlee;

(18) Skip Johnson; and

(19) Former Bankruptcy Judge David W. Houston, III.

The court has probably left a few people off this list, but even a partial one will serve to illustrate the frivolous and vexatious nature of Mr. Bernegger's litigation in this court.

A quick review of the quotations above reveals that, according to Mr. Bernegger, this *large* group of people, most of whom have little or no connection, have *all* conspired together – engaging in lies, trickery, deceit, and fraud – with the singular purpose of ensuring his conviction for orchestrating a scheme to defraud investors. In the unrelenting blizzard of pleadings, Mr. Bernegger never even hints at a reason why such a large group of loosely connected people might unite to secure his conviction. Neither has he touched on why judges, judicial staff, or members of the Clerk's Office, in particular, would focus on his case more than the many others pending at the time. However, as to each person involved, Bernegger alleges that he "lied," "cheated," "committed fraud," "perjured himself," or engaged in some other nefarious activity to ensure that the government secured a conviction. Thus, according to Mr. Bernegger, more than 20 virtually unconnected people entered into a vast conspiracy to ensure he was convicted – and that any challenges to that conviction failed. This is an absurd contention, to say the least.

Indeed, that analysis does not even take into account the fact that Mr. Bernegger's civil case arising out of his criminal proceedings also contains multitudinous meritless allegations against jailors, transport officers, members of the United States Marshal Service, and others during the time he was held in a local detention facility, then transported to various locations for processing into the United States Bureau of Prisons. *See* May 31, 2012, Memorandum Opinion, *Bernegger v. Adams*, 3:10CV5-MPM-SAA [117]. According to Mr. Bernegger, jailors and transport officers at every turn – in different locations across the country – all violated his constitutional rights during this time. These claims were all dismissed. *Id.*

In sum, Peter Bernegger has submitted countless pleadings, motions, emails, and other papers to the court – none of which has merit – and each of which is filled with venomous and unsubstantiated allegations of misconduct directed at prosecutors, judges, court staff, witnesses, and others. The court routinely overlooks such antics from the average *pro se* litigant because most are simply frustrated with their various situations. Normally, a *pro se* litigant would have a few such outbursts in a reasonable number of pleadings, and his case would move forward normally. As amply demonstrated above, that is *not* how Mr. Bernegger's cases proceed, and the court has permitted Mr. Bernegger's antics for far too long – a decision that, unfortunately, seems to have emboldened him to escalate his actions. The court will thus impose a sanction designed to curb Mr. Bernegger's penchant for abusing judicial process by filing frivolous and malicious pleadings, motions, and communications with the court – yet preserving his ability to submit meritorious pleadings which comport with the solemnity and decorum required of *any* litigant in federal court.

## Sanctions

The court may award sanctions under its inherent power for abuse of the judicial process only after finding that the litigant has acted in bad faith. *Roadway Express v. Piper*, 447 U.S. 752, 766, 100

S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).  Sanctions may only be imposed under the court's inherent

power after the person being sanctioned has had adequate notice and a meaningful opportunity to be

heard.  *Persyn v. United States*, 135 F.3d 773 (Fed. Cir. 1997).  The court has the power to police its

docket in situations like the present one, where a litigant files numerous outrageous and meritless

pleadings or otherwise disrupts the orderly administration of the docket.  *Landis v. North American*

*Co.*, 299 U.S. 248 (1936), *Marinechance Shipping v. Sebastian*, 143 F.3d 216 (5th Cir 1998), *U.S.*

*Abatement v. Mobil*, 39 F3d 556 (5th Cir 1993).  The Supreme Court acknowledges the need for the

inherent power sanction when sanctions are clearly appropriate.  *Id.*  A district judge may use the

inherent power of the court to fashion nearly any sanction he deems appropriate to the circumstances;

however, the court should choose the least severe sanction adequate to deter sanctionable conduct in

the future.  *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988).  The court's

inherent power to impose sanctions must be used with restraint and caution because of its potency and

the limited control of its exercise; the power may be exercised only if essential to preserve the

authority of the court, and the sanction chosen must employ the least possible power adequate to the

end proposed.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)*;*

*Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231, 5 L.Ed. 242 (1821), *quoted in Spallone v. United*

*States*, 493 U.S. 265, 280, 110 S.Ct. 625, 635, 107 L.Ed.2d 644 (1990); *see also Roadway Express,*

*supra.*  As long as a party receives an appropriate opportunity to be heard, he may be sanctioned for

abuse of the judicial process occurring beyond the courtroom.  *Chambers v. NASCO, Inc.*, 501 U.S.

32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  The fact that a court initiates sanctions against a party *sua*

*sponte* does not indicate that the court is biased against that party.  *Lemaster v. United States*, 891 F.2d

115 (6th Cir. 1989).  The inherent power of the court emanates from the "control necessarily vested in

courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Link v.*

*Wabash R.R. Co.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

As discussed above, Peter Bernegger's relentless, venomous, and meritless filings have

disrupted the court's ability to rule on the merits of the instant case and expeditiously review and

process other cases. In addition, he has shown no respect for the authority of the judicial officers and

the staff of this court – or that of the United States Attorney's Office. The court, therefore, believes

that a sanction is warranted to curb this behavior. The least sanction the court can discern to put a stop

to Mr. Bernegger's disruptive behavior is: to restrict Bernegger's communications with the court to

paper filings, directly relating to his cases currently pending before the court, and submitted to the

Clerk's Office. In addition, any communications with the court which do not meet these requirements

will be placed in the correspondence portion of Bernegger's file, where they will neither be

acknowledged nor addressed. This sanction would restrict Bernegger to submitting appropriate

filings, and expedite the court's handling of the inappropriate ones.

In addition, given the meritless nature, disrespectful content, and venomous tone of Mr.

Bernegger's prior submissions, the court will require him to submit any future case he wishes to file to

the Chief Judge of this court for screening to determine whether it holds merit. He must also include

with his proposed pleading a copy of this memorandum opinion and final judgment. If the Chief

Judge, or any Judge designated to screen the proposed pleading, finds that it holds no merit – or strikes

a tone of disrespect to the court, United States Attorney's Office, or anyone else – then the pleading

will likewise be placed in a correspondence folder, where it will neither be acknowledged nor

addressed. The Clerk of the Court will, however, send notice to Mr. Bernegger that the court has

found the pleading not to conform to this memorandum opinion and final judgment.

## Conclusion

For the reasons set forth above, the present case will be dismissed with prejudice as frivolous. In addition, the court requires Mr. Bernegger to communicate with the court through written correspondence filed with the Clerk's Office. As to Mr. Bernegger's current cases, the court will only accept motions directly related to those cases. Further, the court requires Mr. Bernegger to submit any new case, along with a copy of this memorandum opinion and final judgment, to the Chief Judge for screening. If Mr. Bernegger's submissions to the court do not follow these guidelines, then they will be placed in a correspondence folder, where they will be neither acknowledged nor addressed. As to new cases, the Clerk of the Court will, however, send notice to Mr. Bernegger that the court has found the pleading not to conform to this memorandum opinion and final judgment. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 8th day of December, 2015.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**